IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | | |
|---|---|---|
| JOAN HOLMES, | ) | |
| | ) | |
| Plaintiff, | ) | No. 10 C 8085 |
| | ) | |
| v. | ) | Judge Ronald A. Guzmán |
| | ) | |
| UNITED AIRLINES, INC., UNITED | ) | |
| CONTINENTAL HOLDINGS, INC., and | ) | |
| GOJET AIRLINES, LLC, | ) | |
| | ) | |
| Defendants. | ) | |

**MEMORANDUM OPINION AND ORDER**

In this diversity suit, plaintiff Joan Holmes has sued United Air Lines, Inc. ("UAL"), United Continental Holdings, Inc. ("UCH") and GoJet Airlines, LLC ("GoJet") for negligence relating to her slip and fall on a metal ladder while deplaning on December 24, 2009. Defendants move to dismiss the complaint arguing that: (1) plaintiff's state law claims are preempted by the Federal Aviation Act of 1958 ("FAA"), 49 U.S.C. §§ 40101-49105, and the Airline Deregulation Act of 1978 ("ADA"), 49 U.S.C. § 41713(b)(1); and (2) plaintiff fails to state a claim against UCH because it is a separate legal entity that cannot be liable for the actions of its agent and subsidiary, UAL. For the reasons provided in this Memorandum Opinion and Order, the Court denies the motion.

**Facts**

On December 24, 2009, Holmes was a fee-paying passenger on UAL and GoJet's flight with service from Burlington, Vermont to Chicago, Illinois. (Am. Compl. ¶¶ 10-11, 36-37.) UAL and GoJet owned and maintained a metal ladder that it provided as a means for passengers to deplane. (*Id.* ¶¶ 14, 40.) While utilizing the ladder, Holmes slipped and fell from the ladder.

(*Id.* ¶ 19.) As a result, Holmes suffered from multiple spine fractures, which required casting, surgery and extensive rehabilitation. (*Id.* ¶ 20.) Holmes alleges that defendants are liable because they negligently failed to:

    (a) provide a safe, suitable, and proper means for Holmes and other passengers to deplane the aforementioned flight;

    (b) go to another gate so that Holmes and other passengers could deplane the aforementioned flight by means of a jetway;

    (c) wait for another gate to become available so that Holmes and other passengers could deplane the aforementioned flight by means of a jetway;

    (d) provide a stairway ramp for use by Holmes and other passengers to deplane the aforementioned flight;

    (e) refrain from requiring Holmes and other passengers to deplane by means of the subject ladder when defendants knew or in the exercise of ordinary care should have known that doing so presented a hazard given the weather conditions;

    (f) equip the ladder with adequate safeguards, including but not limited to traction tape or other slip protection, when defendants knew or in the exercise of ordinary care should have known that such safety measures were necessary to prevent injury to Holmes and other passengers ("Holmes and others") from slipping while using the ladder;

    (g) properly maintain the ladder when defendants knew, or in the exercise of due care should have known that the lack of safeguards on the ladder posed a hazard to Holmes and others using the ladder;

    (h) warn Holmes of the hazard posed by the lack of safeguards on the ladder, and the dangerous condition then and there existing, when defendants knew, or in the exercise of

ordinary care should have known, that said warning was necessary to prevent injury to Holmes and others using the ladder;

(i) prevent an unnatural accumulation of water to be present on the steps of the ladder, when defendants knew or in the exercise of ordinary care should have known that the presence of water posed a hazard to Holmes and others using the ladder;

(j) prevent an unnatural accumulation of water to be present on the handrails of the ladder, when defendants knew or in the exercise of ordinary care should have known that the presence of water posed a hazard to Holmes and others using the ladder;

(k) correct the hazardous condition posed by the unnatural accumulation of water on the steps of the ladder, when defendants knew or in the exercise of ordinary care should have known that such correction was necessary to prevent injury to Holmes and others using the ladder;

(l) correct the hazardous condition posed by the unnatural accumulation of water on the handrails of the ladder, when defendants knew or in the exercise of ordinary care should have known that such correction was necessary to prevent injury to Holmes and others using the ladder;

(m) warn Holmes of the unnatural accumulation of water on the steps of the ladder, and the hazardous condition then and there existing, when defendants knew or in the exercise of ordinary care should have known that said warning was necessary to prevent injury to Holmes and others using the ladder;

(n) warn Holmes of the unnatural accumulation of water on the handrails of the ladder, and the hazardous condition then and there existing, when defendants knew or in the exercise of ordinary care should have known that said warning was necessary to prevent injury to Holmes

and others using the ladder.  (*Id.* ¶¶ 18, 31, 44.)  At all times, UAL was acting as UCH's agent.  (*Id.* ¶¶ 22-33.)

## Discussion

The purpose of a Rule 12(b)(6) motion to dismiss is to test the sufficiency of the complaint, not to resolve the case on the merits.  *Gibson v. City of Chi.*, 910 F.2d 1510, 1520 (7th Cir. 1990); *see Autry v. Nw. Premium Servs., Inc.*, 144 F.3d 1037, 1039 (7th Cir. 1998).  In evaluating the motion, the court accepts as true all well-pleaded factual allegations in the complaint, and any inferences reasonably drawn from those facts are construed in the light most favorable to the plaintiff.  *Roots P'ship v. Lands' End, Inc.*, 965 F.2d 1411, 1416 (7th Cir. 1992).  A court should dismiss a complaint if it fails to provide the defendant with fair notice of what the claim is and the grounds upon which it rests.  *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007).  "[D]etailed factual allegations" are not required, but the plaintiff must allege facts that "state a claim to relief that is plausible on its face" and raise the possibility of relief above the "speculative level."  *Id.* at 545, 570.  A claim is facially plausible when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the alleged misconduct.  *Bissessur v. Ind. Univ. Bd. of Trs.*, 581 F.3d 599, 602 (7th Cir. 2009).

## I. Preemption

Defendants argue that plaintiff's state law claims are preempted by the FAA and the ADA.  The Supremacy Clause of the U.S. Constitution provides that the Constitution and laws of the United States are "the supreme Law of the Land . . . any Thing in the Constitution or Laws of

any State to the Contrary notwithstanding." U.S. Const. art. VI, cl. 2. "[T]he question whether a certain state action is preempted by federal law is one of congressional intent." *Ingersoll-Rand Co. v. McClendon*, 498 U.S. 133, 137-38 (1990) (quotation omitted). "To discern Congress' intent we examine the explicit statutory language and the structure and purpose of the statute." *Id.* at 138.

Preemption may be express or implied. *Shaw v. Delta Air Lines, Inc.*, 463 U.S. 85, 95 (1983). "Express preemption occurs when a federal statute explicitly states that it overrides state or local law." *Hoagland v. Town of Clear Lake, Ind.*, 415 F.3d 693, 696 (7th Cir. 2005). "With implied preemption, a state law should be sustained 'unless it conflicts with federal law or would frustrate the federal scheme, or unless the courts discern from the totality of the circumstances that Congress sought to occupy the field to the exclusion of the States.'" *520 S. Mich. Ave. Assocs., Ltd. v. Shannon*, 549 F.3d 1119, 1125 (7th Cir. 2008) (quoting *Malone v. White Motor Corp.*, 435 U.S. 497, 504 (1978)). "There is a presumption against finding federal preemption of state law." *Thiele v. Norfolk & W. Ry. Co.*, 68 F.3d 179, 181 (7th Cir. 1995). Thus, "pre-emption will not lie unless it is 'the clear and manifest purpose of Congress.'" *CSX Transp., Inc. v. Easterwood*, 507 U.S. 658, 664 (quoting *Rice v. Santa Fe Elevator Corp.*, 331 U.S. 218, 230 (1947)).

**A. Express Preemption**

The FAA, as originally enacted, did not preempt state law causes of action explicitly. *Bieneman v. City of Chi.*, 864 F.2d 463, 471 (7th Cir. 1988).[1] However, the ADA has an express

---

[1] Rather, its savings clause states: "Nothing contained in this chapter shall in any way abridge or alter the remedies now existing at common law or by statute, but the provisions of this chapter are in addition to such remedies." 49 U.S.C. § 1506; *see* 49 U.S.C. § 40120 ("A remedy under this part is in addition to any other remedies provided by law.")

5

preemption clause that states in pertinent part: "Except as provided in this subsection, a State, political subdivision of a State, or political authority of at least 2 States may not enact or enforce a law, regulation, or other provision having the force and effect of law related to a price, route, or service of an air carrier that may provide air transportation under this subpart." 49 U.S.C. § 41713(b)(1). The ADA's express preemption provision "assured the economic deregulation of the airlines by rendering them immune from rate and service regulation by the states after the demise of federal regulation." *Smith v. Am. W. Airlines, Inc.*, 44 F.3d 344, 346 (5th Cir. 1995). Congress simply did not want states to replace the void left by the Civil Aeronautics Board with their own regulation of the rates charged, the routes flown and the cities serviced. *Id.*

Using ERISA's express preemption language as a guide, the Supreme Court in *Morales v. Trans World Airlines, Inc.* held that a law is "related to rates, routes, or services of an air carrier" (quoting 49 U.S.C. § 1305(a)(1), amended by 49 U.S.C. § 41713(b)(1) (which now reads "a price, route, or service")), if it has "a connection with or reference to airline rates, routes, or services." 504 U.S. 374, 384 (1992) (internal quotation marks omitted). However, *Morales* also held that if the claim merely has a tenuous effect on rates, routes and services, it is not preempted. *Id.* at 388-89 (stating "[s]ome state actions may affect [airline fares] in too tenuous, remote, or peripheral a manner" to have pre-emptive effect." (internal quotation omitted)). Because "[n]either the language nor history of the ADA implies that Congress was attempting to displace state personal injury tort law concerning the safety of the airline business[,]" the Fifth Circuit has held that "it is reasonable to interpret the 'service' of boarding to be limited to economic decisions concerning boarding, *e.g.*, overbooking or charter arrangements, and

---

However, the Seventh Circuit has held that § 1506 is irrelevant to the express preemption analysis because it merely preserves state common law from implicit preemption. *Ill. Corporate Travel, Inc. v. Am. Airlines, Inc.*, 889 F.2d 751, 754 (7th Cir. 1989).

contractual decisions whether to board particular ticketed passengers." *Smith*, 44 F.3d at 346-47. The Seventh Circuit has adopted the Fifth Circuit's definition of services and held that it includes "ticketing, boarding procedures, provision of food and drink, and baggage handling, in addition to the transportation itself." *Travel All Over the World, Inc. v. Kingdom of Saudi Arabia*, 73 F.3d 1423, 1433 (7th Cir. 1996); *see Hodges v. Delta Airlines, Inc.*, 44 F.3d 334, 336 (5th Cir. 1995) (en banc).

With regard to express preemption and the ADA, the Seventh Circuit stated:

> To see what is not preempted, we . . . first look at the kinds of regulations which are preempted. These include noise regulation ordinances and flight pattern controls. In *City of Burbank v. Lockheed Air Terminal*, 411 U.S. 624, 93 S. Ct. 1854, 36 L. Ed. 2d 547 (1973), the Supreme Court determined that in light of the pervasive nature of the scheme of federal regulation of aircraft noise, as evidenced by the Noise Control Act of 1972, the FAA and the Environmental Protection Agency had full control over airport noise, preempting local control. The Court of Appeals for the Eleventh Circuit followed suit in *Pirolo v. City of Clearwater*, 711 F.2d 1006 (11th Cir. 1983), finding that local ordinances prohibiting night operations and proscribing air traffic patterns were preempted. The Court of Appeals for the Ninth Circuit found that curfews on aircraft flights were preempted in *San Diego Unified Port District v. Gianturco*, 651 F.2d 1306 (9th Cir. 1981).
>
> In *Abdullah v. American Airlines, Inc.*, 181 F.3d 363 (3d Cir. 1999), the court found air safety regulations preempted. And a state statute requiring drug testing of pilots was found to be preempted in *French v. Pan Am Express, Inc.*, 869 F.2d 1 (1st Cir. 1989).
>
> These cases have one thing in common. They involve issues which reach far beyond a single local jurisdiction and which cannot sensibly be resolved by a patchwork of local regulations.

*Hoagland*, 415 F.3d at 697. Since *Abdullah*, the Third Circuit in *Elassaad v. Independence Air, Inc.* held that a negligence claim based on injuries sustained while deplaning is not related to air safety and thus not preempted by federal law. 613 F.3d 119, 126 (3rd Cir. 2010).

Given the nature of the negligence claim in the instant case, the Court holds that it does not relate to airline prices, routes and services. A negligence claim based on a slip and fall on a metal ladder while deplaning is not related to defendants' economic or contractual decisions concerning deplaning. The manner of using a metal ladder to deplane has nothing to do with the prices airlines charge, the routes airlines take or the cities that the airlines service. Further, the manner in which defendants employed the metal ladder has nothing to do with the operation and maintenance of an airline's aircraft or in-flight safety because the ladder is not part of, or even stored within, the aircraft itself. Thus, the Court holds that individual determinations of negligence in the manner in which an airline employs a metal ladder for the purpose of deplaning does not involve issues that reach far beyond a single local jurisdiction and cannot sensibly be resolved by various local regulations. Accordingly, the Court holds that a negligence claim based on the use of a metal ladder to deplane passengers affects airline fares, routes and services in too tenuous, remote or peripheral a manner to have a preemptive effect.

The body of case law is replete with post-ADA cases in which courts have recognized that personal injury negligence claims against airlines are governed by state law. *E.g., Elassaad*, 613 F.3d at 126 (holding that FAA does not preempt negligence claim based in part on airline's failure to make available all appropriate safety measures and devices to assist plaintiff in deplaning); *Seidman v. Am. Airlines, Inc.*, 923 F.2d 1134, 1138 (5th Cir. 1991) (holding that jury could find airline negligent under Louisiana law in connection with passenger's injury while using slide to deplane); *see Bieneman v. City of Chi.*, 864 F.2d 463, 471 (7th Cir. 1988) ("State courts award damages every day in air crash cases, notwithstanding that federal law preempts the regulation of safety in air travel."); *In re Mexico City Aircrash of Oct. 31, 1979*, 708 F.2d 400, 414 n.25 (9th Cir. 1983) ("For example, in the United States, state law causes of action may be

invoked by plaintiffs injured during international air transportation."); *In re Air Crash Disaster at Sioux City, Ia., on July 19, 1989*, 734 F. Supp. 1425, 1428 (N.D. Ill. 1990) (state law actions for punitive damages not preempted by FAA); *Brown v. Byard*, 600 F. Supp. 396, 399 (S.D. Ohio 1984) (noting that the FAA preserves state remedies for negligence, "which the common and statutory law of the states deals every day"); *Obenshain v. Halliday*, 504 F. Supp. 946, 950 (E.D. Va. 1980) (stating that the FAA preserves state remedies for negligence); *Heckel v. Beech Aircraft Corp.*, 467 F. Supp. 278, 281 (W.D. Pa. 1979) (noting that "ample state remedies for negligence . . . are available").

The Court finds these cases instructive as to the outcome of the instant motion. Given this body of case law interpreting the FAA and ADA, the Court holds that Congress did not expressly preempt personal injury negligence claims against airlines regarding the use of metal ladders to deplane.

### B. Implied Preemption

"The fact that an express definition of the pre-emptive reach of a statute 'implies'- *i.e.*, supports a reasonable inference-that Congress did not intend to pre-empt other matters does not mean that the express clause entirely forecloses any possibility of implied pre-emption." *Freightliner Corp. v. Myrick*, 514 U.S. 280, 288 (1995). "[A] federal statute implicitly overrides state law either when the scope of a statute indicates that Congress intended federal law to occupy a field exclusively, or when state law is in actual conflict with federal law." *Sprietsma v. Mercury Marine*, 537 U.S. 51, 64 (2002) (citation omitted). Conflict preemption occurs "where it is impossible for a private party to comply with both state and federal requirements or where state law stands as an obstacle to the accomplishment and execution of the full purposes and

objectives of Congress."  *English v. Gen. Elec. Co.*, 496 U.S. 72, 79 (1990) (citation and quotation omitted).

First, with regard to field or complete preemption, the Seventh Circuit has held that Congress did not intend the FAA to occupy the field of torts exclusively.  *See Vorhees v. Naper Aero Club, Inc.*, 272 F.3d 398, 404 (7th Cir. 2001) (stating that because the FAA "has no civil enforcement provision or any provision allowing a private resident to sue for the property torts of an airline pilot or airport operator," the FAA "does not completely extinguish all rights based on state law"); *see Bieneman.*, 864 F.2d at 473 ("[T]he state may employ damages remedies only to enforce federal requirements . . . or to regulate aspects of airport operation over which the state has discretionary authority.").  Thus, field, or complete, preemption does not apply in this case.

Second, with regard to conflict preemption, the litigants have failed to provide support for the argument that Illinois state law is in actual conflict with federal law.  The parties appear to assume that no federal regulation exists regarding the use of metal ladders during deplaning.  Further, given the Court's analysis above as to Congress' intent with regard to express and field preemption, it follows that a state common law negligence claim based on the use of a metal ladder to deplane does not stand as an obstacle to the accomplishment and execution of the full purposes and objectives of Congress in enacting the FAA and ADA.  As such, based on the facts of this case, conflict preemption is inapplicable.

## II.  Negligence Claim Against UCH

Next, UAL argues that plaintiff fails to state a negligence claim against UCH because it is a separate legal entity that cannot be liable for the actions of its subsidiary, UAL.  Plaintiffs

disagree and argue that the complaint states a claim for negligence against UCH under either a "piercing the corporate veil" theory or "direct participant" theory. The Court addresses each in turn.

"Under Illinois law, a corporation is a legal entity separate and distinct from its shareholders, directors and officers, and, generally, from other corporations with which it may be affiliated." *Van Dorn Co. v. Future Chem. & Oil Corp.*, 753 F.2d 565, 569 (7th Cir. 1985). "As a general principle, a parent corporation is not liable for the acts of its subsidiaries." *Destiny Health, Inc. v. Conn. Gen. Life Ins. Co.*, 741 F. Supp. 2d 901, 907 (N.D. Ill. 2010).

A plaintiff may pierce the corporate veil if two elements are satisfied: (1) there is "such unity of interest and ownership that the separate personalities of the corporation and the individual [or other corporation] no longer exist"; and (2) "circumstances must be such that adherence to the fiction of separate corporate existence would sanction a fraud or promote injustice." *Van Dorn*, 753 F.2d at 569-70 (quotation omitted). Only when a plaintiff "fairly alleges an entity exists as the alter ego of another and provides factual manifestations suggesting the existence that the two operate as a single entity [will] a motion to dismiss . . . be denied." *Kellers Sys., Inc. v. Transport Int'l Pool, Inc.*, 172 F. Supp. 2d 992, 1001 (N.D. Ill. 2001) (citations omitted); *see RehabCare Group East, Inc. v. SAK Mgmt. Servs., LLC*, No. 09 C 4523, 2010 WL 3307084, at *5 (N.D. Ill. Aug. 18, 2010). "[S]tock ownership alone in one corporation by another is common in a parent-subsidiary relationship and does not create the relation of principal and agent or alter ego between the two." *Caligiuri v. First Colony Life Ins. Co.*, 742 N.E.2d 750, 756 (Ill. App. Ct. 2000).

In this case, plaintiff has failed to allege either that UAL is the alter ego of UCH or that recognizing UCH as a separate corporation would sanction a fraud or promote injustice.

Plaintiff simply alleges that UAL acted as UCH's agent at all relevant times and with regard to the acts and omissions of which she complains. These allegations are clearly insufficient to state a claim for negligence against UCH based on a "piercing the corporate veil" theory.

"[U]nder the direct participant theory of liability, a parent corporation may be held liable if 'there is sufficient evidence to show that the parent corporation directed or authorized the manner in which an activity is undertaken.'" *Destiny*, 741 F. Supp. 2d at 907 (quoting *Forsythe v. Clark USA, Inc.*, 864 N.E.2d 227, 237 (Ill. 2007)).

> Where there is evidence sufficient to prove that a parent company mandated an overall business and budgetary strategy and carried that strategy out by its own specific direction or authorization, surpassing the control exercised as a normal incident of ownership in disregard for the interests of the subsidiary, that parent company could face liability. The key elements to the application of direct participant liability, then, are a parent's specific direction or authorization of the manner in which an activity is undertaken and foreseeability. If a parent company specifically directs an activity, where injury is foreseeable, that parent could be held liable. Similarly, if a parent company mandates an overall course of action and then authorizes the manner in which specific activities contributing to that course of action are undertaken, it can be liable for foreseeable injuries.

*Forsythe*, 864 N.E.2d at 237.

Again, plaintiff has failed to allege that UCH directed or authorized the manner in which UAL employed the metal ladder to deplane the passengers. Merely alleging that UAL acted as UCH's agent does not sufficiently allege the kind of direction and authorization required to state a claim for negligence based on a direct participant theory regarding such use of the metal ladder.

In sum, the Court holds that plaintiff has failed to state a claim for negligence against UCH based on either a "pierce the corporate veil" or "direct participant" theory. Accordingly, the Court grants the motion to dismiss plaintiff's negligence claim against UCH without prejudice and dismisses UCH as a defendant.

**Conclusion**

For the foregoing reasons, the Court grants in part and denies in part UAL and UCH's motion to dismiss [23] and denies GoJet's motion to dismiss [39]. The Court grants UAL and UCH's motion to dismiss plaintiff's negligence claim against UCH without prejudice and dismisses UCH as a defendant. In all other respects, UAL and UCH's motion is denied. The Court grants plaintiff leave to cure the stated deficiencies within fifteen days and reminds plaintiff of her obligations under Rule 11 with regard to any such amendment.

**SO ORDERED.**                    **ENTERED:  January 25, 2012**

*Ronald A. Guzman*

**RONALD A. GUZMAN**
**U.S. District Judge**